Losing, J.,
delivered the opinion of the court :
The contract was for a million pounds “ of good, merchantable prairie hay,” and the court has found that the hay did not conform to that description. The controlling word in it is “ merchantable and that is not used in reference to any particular locality or market, but only as descriptive of the quality of the hay required by the contract, and so used, the word merchantable means generally vendible in market; and merchandise is so vendible because of its fitness to serve its proper purpose, and therefore, when it is applied to forage, “merchantable” means generally edible. And the purpose of the contract so construes it between the parties.
In this case, as in most cases which turn on a matter of judgment, there is a conflict of testimony, and the witnesses on the respective sides differ, but the evidence furnishes an authoritative umpire between them. For it shows, and the fact is found, that the horses for whom the hay was furnished refused to eat it in two experiments by two different lots of hay, at different times, in the latter of which they were furnished with this hay and no other for four consecutive days. It is true that they had their usual quantity of grain; and had been fed previously *686 on better bay or green food ; but four days of fasting would necessarily waken an appetite for edible bay; and that, under such experiments, tbe borses refused this bay, we think supports tbe opinion that it was not generally edible nor in conformity with tbe words or purposes of tbe contract.
Under tbe military orders of tbe department, and tbe provisions of tbe contract, two boards of military officers were provided ; one an inspecting-board, to perform tbe inspection required by law; the other a revisory board, to re-examine bay rejected by tbe inspecting-board. And this revisory board was an advantage to tbe contractor, provided for him by tbe contract, which be might use or waive.
As it is not found that tbe revising-board was appointed, or that tbe petitioner requested its appointment, tbe necessary conclusion is that tbe revisory board was not appointed by the-defendants nor requested by tbe petitioner.
The only claim tbe petitioner can have on tbe contract is for a breach of contract by tbe United States in not convening a board of officers to re-examine tbe bay rejected on tbe inspection, and it would seem to be answer enough to this that tbe petitioner did not request that such board might be convened. For where a contract provides for an advantage to one party requiring tbe action of tbe other, tbe former has bis option whether be will use tbe advantage provided for him or forbear its use, and therefore be should declare bis option that the other party may not be subjected to tbe cost or trouble of acting uselessly.
But admitting that tbe omission of tbe United States to convene tbe revisory board was a breach of contract, then tbe question is, what is tbe measure of damage 1 And it is manifest that if the revisory board would have found that the bay was not conformable to tbe contract, tbe petitioner would have suffered no damages from the non-appointment of tbe revisory board. And on tbe facts found by the court that tbe bay was not good, merchantable prairie-bay, tbe presumption must be that the revising-board would have found in tbe same way, and thus affirmed tbe action of tbe inspecting-board.
And if tbe burden is on tbe petitioner to establish the fact or tbe probability that the revisory board of officers would have approved tbe hay rejected by tbe board of inspection, this is not done by evidence that better bay could not have been *687 procured in tbe quantities contracted for within ten miles of ' Brownsville, or that the same kind or quality of hay was purchased in former years on other contracts. For this contract does not confine the contractor to within ten miles of Brownsville, nor does it refer to other contracts for the description of the hay to be furnished under this; neither is it pertinent to-show that individuals in Brownsville purchased this kind anil quality of hay ; for individuals seek economy in feeding their animals, and consult their own means of expenditure, while officers seek efficiency for the animals in the public service, and would not be likely to approve of hay which horses supplied with it and no other for four days refused to eat. Neither is-it pertinent to refer to the advertisement and proposals which led to the contract; for each of these was the act of one only of the parties, and is therefore irrelevant to the contract, which is the final result both parties agreed on as such, and made the declaration of their mutual intent to the exclusion of any other intent.
The statements of facts show—
1. That after the rejection of the hay tendered by the petitioner, and in lieu of that contracted for and not delivered, the-defendants purchased 274,484 pounds of hay for the supply of Fort Brown, at a cost of $5,268.80, and paid for its transportation $2,575.39 ; and on account thereof they in their counterclaim filed with the pleadings claim $4,548.39 as due to the United States.
2. That in the experiments above stated, 10,750 pounds of the hay of the petitioner was supplied to the animals at Fort Brown, the value of which at the contract-price was $129.
And the judgment of the court is that the United States are entitled to recover from the petitioner the difference between, said sum of $4,548.39 and the said sum of $129, amounting to the sum of $4,419.39.